UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:15-CV-80310-KAM

LARRY KLAYMAN,

　　　Plaintiff,

vs.

STEPHANIE A. DELUCA, et. al.,

　　　Defendants.

_____/

**OPINION AND ORDER GRANTING MOTIONS FOR JUDICIAL NOTICE
AND MOTIONS TO DISMISS**

　　　This matter is before the Court on Defendants' motions to dismiss (DE 16; 18) and motions for judicial notice (DE 15; 35; 38). These motions are ripe for review.

### I. Background and Procedural History

　　　Plaintiff, Larry Klayman, and Defendant, Stephanie DeLuca divorced in 2003. (DE 1 ¶ 10.) They have two children together. (DE 1 ¶ 12.) In 2007, Klayman filed for full custody of the children in the Court of Common Pleas for Cuyahoga County, Ohio. (DE 1 ¶ 12.) Defendants Suzanne Jambe and James Rollinson, partners at the law firm Baker & Hostetler, LLP ("Baker"), represented DeLuca. (DE 1 ¶¶ 3–4, 11.) In representing DeLuca, Jambe and Rollinson acted under the supervision and direction of Defendant Hewitt Shaw (collectively with Jambe, Rollinson, and Baker, the "Baker Defendants"), the managing partner of Baker's Cleveland office. (DE 1 ¶ 12.) Ultimately, the family court granted DeLuca custody of the children, ordered that Klayman could only have supervised visits with his children, and awarded DeLuca attorneys' fees. (DE 1 ¶¶ 24, 32.)

Klayman alleges that after he filed the custody lawsuit "Defendants arranged and implemented a pattern of illegal activities in an attempt to financially, personally, and emotionally harm" him. (DE 1 ¶ 17.) He alleges five instances of misconduct, or "predicate acts," during the family court litigation. First, he alleges that Defendants defrauded the family court by falsely accusing him of having sexually abused his children. (DE 1 ¶¶ 20–27.) Second, Klayman claims that Defendants suppressed the expert testimony of a child psychologist who determined that Klayman had not abused his children. (DE 1 ¶¶ 28–32.) Third, Klayman alleges that, "[u]pon information and belief," Defendants illegally influenced the family court magistrate judge through "gratuities and favors, financial and otherwise." (DE 1 ¶ 33.) The fourth and fifth "predicate acts" involve Defendants improperly obtaining records pertaining to Klayman by "fraudulently" issuing subpoenas to Colonial Bank and Paypal, Inc. ("PayPal"). (DE 1 ¶¶ 40–41, 51, 64.)[1]

In his complaint, Klayman asserts claims under the civil remedies provision of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964 (2012), and various state[2] common law claims. Klayman does not ask the Court to declare the Ohio family court judgment void, nor does he seek relief that would effectively reverse that judgment, such as a grant of custody. Instead, he seeks millions of dollars in damages and an injunction "preventing Defendants from once again attempting to gain access to information believed to be that of Plaintiff's." (DE 1 at 85.)

The Baker Defendants filed a motion to dismiss arguing that (1) the Court lacks subject-

---

[1] Klayman states that "[i]n addition to the fraudulent and illegal activities already described" Defendants violated several federal and Florida state criminal statutes. (DE ¶ 70.) But all the alleged statutory violations are based on, rather than "in addition to," the previously described "predicate acts."

[2] It is unclear whether Klayman's state common law claims are based on Florida or Ohio law, but it does not affect the outcome of Defendants' motions.

matter jurisdiction under the *Rooker-Feldman* doctrine, (2) the Court lacks personal jurisdiction over them, and (3) Klayman fails to state a claim upon which relief can be granted. (DE 16.) DeLuca also filed a motion to dismiss that "adopts, and incorporates by reference, the arguments raised" in the Baker Defendants' motion. (DE 18.) In support of their motion to dismiss, the Baker Defendants filed three motions for the Court to take judicial notice of a total of fifty-two public record documents, primarily from the Ohio family court litigation. (DE 15; 35; 38.) Klayman did not respond to any of the motions to take judicial notice.

## II. Judicial Notice

A "court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A "court may take judicial notice at any stage of the proceeding." Fed. R. Evid. 201(d). A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2).

The Baker Defendants' motion to dismiss asserts lack of subject-matter jurisdiction, lack of personal jurisdiction, and failure to state a claim. It is proper to judicially notice facts when considering any of these grounds for dismissal. A court may consider evidence outside the complaint when deciding a motion to dismiss for lack of subject-matter or personal jurisdiction. *See Makro Capital of Am., Inc. v. UBS AG*, 543 F.3d 1254, 1258 (11th Cir. 2008) ("factual attacks" on subject-matter jurisdiction); *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268–69 (11th Cir. 2002) (personal jurisdiction). When deciding a motion to dismiss for failure to state a claim, a court may consider judicially noticed matters without converting the motion to one for summary judgment.

3

*See Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066, 1075 n.9 (11th Cir. 2013); *see also*

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322,(2007) ("[C]ourts must consider the

complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule

12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference,

and matters of which a court may take judicial notice.").

The documents that the Baker Defendants request the Court to judicially notice are all filings

in other courts and are matters of public record. A court may take judicial notice of orders and other

documents filed in another court, but not of the truth of the matters asserted therein. *See United

States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994). The authenticity of these documents cannot

reasonably be questioned and Klayman does not argue otherwise. Accordingly, the Court grants the

Baker Defendants' motions to take judicial notice of these documents—but only to establish the fact

of these filings and that certain matters were decided rather than the truth of any facts asserted within

them. *See id.* The Court will consider these documents to the extent they are relevant.

### III. Subject-Matter Jurisdiction

#### A. Legal Standard

"Article III generally requires a federal court to satisfy itself of its jurisdiction over the

subject matter before it considers the merits of a case." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S.

574, 583 (1999). Federal courts are courts of limited subject-matter jurisdiction, and the party

invoking the court's jurisdiction bears the burden of proving it exists. *McCormick v. Aderholt*, 293

F.3d 1254, 1257 (11th Cir. 2002) (per curiam). Attacks on a court's subject-matter jurisdiction under

Federal Rule of Civil Procedure 12(b)(1) may be facial or factual. *Lawrence v. Dunbar*, 919 F.2d

1525, 1528–29 (11th Cir. 1990) (per curiam). Facial attacks require the court to determine whether

4

the allegations in the complaint taken as true adequately establish subject-matter jurisdiction. *Id.* at 1529. Factual attacks challenge the existence of subject-matter jurisdiction in fact, and the court is permitted to look beyond the pleadings and (so long as an element of the cause of action is not implicated) weigh evidence to determine whether it has subject-matter jurisdiction. *Id.* Here, Defendants' attack is factual because it depends on matters outside the complaint.

### B. *Rooker-Feldman* Doctrine

Defendants argue that the *Rooker-Feldman* doctrine requires the Court to dismiss this action for lack of subject-matter jurisdiction. Under the *Rooker-Feldman* doctrine, federal district courts may not exercise appellate jurisdiction over state-court judgments. *Lance v. Dennis*, 546 U.S. 459, 463 (2006) (per curiam). Congress granted the Supreme Court such appellate jurisdiction, but (aside from limited exceptions[3]) it has empowered district courts with only original jurisdiction. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005); *Nicholson v. Shafe*, 558 F.3d 1266, 1271–72 (11th Cir. 2009). The doctrine takes its name from the only two cases in which the Supreme Court has applied it: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

In *Rooker*, parties who lost in state court brought suit in federal district court to have the state-court judgment "declared null and void" because it allegedly violated several constitutional provisions. 263 U.S. at 414–15. The Supreme Court held that "no court of the United States other than this court could entertain a proceeding to reverse or modify the judgment for errors of that

---

[3] For example, Congress has explicitly authorized district courts to exercise federal habeas review of state prisoners' petitions. *See* 28 U.S.C. § 2254(a) (2012); *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 n.8 (2005). Congress has also granted district courts jurisdiction to hear bankruptcy appeals. 28 U.S.C. § 158 (2012).

character. To do so would be an exercise of appellate jurisdiction. The jurisdiction possessed by the District Courts is strictly original." *Id.* at 416 (internal citations omitted).

In *Feldman*, the District of Columbia Court of Appeals denied two applicants' requests for waivers from a bar-admission requirement. 460 U.S. at 468–73. The applicants sued in federal district court seeking an injunction allowing them to be admitted to the bar or to sit for the bar exam, as well as declarations that the D.C. court's actions violated the Fifth Amendment and federal antitrust laws. *Id.* The Supreme Court held that, because the denials of the waiver requests were judicial in nature, the district court lacked subject-matter jurisdiction over the claims that were "inextricably intertwined" with the denials. *Id.* at 486–87. But the Court also held that there was subject-matter jurisdiction over the claims to the extent they generally challenged the validity of the bar rules themselves rather than the denials. *Id.* at 487. The Court noted, but did not decide, the issue of whether *res judicata* precluded review of this part of the applicants' complaints. *Id.* at 487–88.

The Supreme Court clarified the *Rooker-Feldman* doctrine in *Exxon*. It observed that lower courts had construed the doctrine "far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law." *Exxon*, 544 U.S. at 283. The Court held that *Rooker-Feldman* "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284.

The *Exxon* Court stressed the narrowness of the doctrine and that "*Rooker-Feldman* does not otherwise override or supplant preclusion doctrine." *Id.* It explained that *Rooker-Feldman* does not

6

"stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" *Id.* at 293 (quoting *GASH Assocs. v. Vill. of Rosemont, Ill.*, 995 F.2d 726, 728 (7th Cir. 1993) and also citing with approval *Noel v. Hall*, 341 F.3d 1148, 1163–64 (9th Cir. 2003)).

One year after *Exxon*, the Supreme Court re-emphasized the importance of not allowing the *Rooker-Feldman* doctrine to eclipse preclusion law. *See Lance*, 546 U.S. at 466 ("The District Court erroneously conflated preclusion law with *Rooker–Feldman*. . . . *Rooker-Feldman* is not simply preclusion by another name."). Again noting the "narrowness" of *Rooker-Feldman*, the Court warned that if applied too expansively *Rooker-Feldman* would "supplant" Congress's directive to apply state law in deciding what effect to give state-court judgments. *Id.* at 464, 466. "Incorporation of preclusion principles into *Rooker-Feldman*" the Court explained, "risks turning that limited doctrine into a uniform *federal* rule governing the preclusive effect of state-court judgments, contrary to the Full Faith and Credit Act." *Id.* at 466.

### C. *Rooker-Feldman*'s Applicability to Klayman's Claims

Based on *Exxon*'s clarification of the *Rooker-Feldman* doctrine, *Rooker-Feldman* cannot apply to the extent Klayman's claims are based on Defendants' allegedly "fraudulent" subpoenas. As explained in *Exxon*, *Rooker-Feldman* applies only when the plaintiff complains of injuries "caused by state-court judgments." 544 U.S. at 284. The alleged injuries here were caused by the issuance of subpoenas and the retention of records. Even if Klayman won in the state court, these

alleged injuries would still exist. Accordingly, the injuries were not caused by the state-court judgment. As to the claims based on the allegedly "fraudulent" subpoenas, *Rooker-Feldman* does not bar subject-matter jurisdiction.

As to the remaining claims, Klayman argues *Rooker-Feldman* does not bar his suit because the Ohio family court proceedings have not ended. "*Rooker–Feldman* will not bar subject matter jurisdiction where a plaintiff initiates the federal lawsuit before the state court proceedings have ended." *Nicholson*, 558 F.3d at 1275. According to Klayman, "the lawsuit in the Cuyahoga family court is still ongoing." (DE 31 at 24.) The post-judgment proceedings to which Klayman alludes are the product of an Ohio statute providing that after entering judgment the family court retains jurisdiction over issues relating to custody of the children. *See* Ohio Rev. Code Ann. § 3127.16 (West 2015). Nevertheless, the Ohio family court issued a final judgment, the state intermediate appellate court affirmed, and the Supreme Court of Ohio declined to accept jurisdiction of Klayman's appeal. (DE 15-17; 15-20; 15-22.) Klayman filed his federal complaint years later. For *Rooker-Feldman* purposes, the state proceedings have ended. *See Nicholson*, 558 F.3d at 1275.

Klayman also argues that *Rooker-Feldman* does not apply where the state court's decision was procured through fraud. Some circuits have held that *Rooker-Feldman* "does not bar subject matter jurisdiction when a federal plaintiff alleges a cause of action for extrinsic fraud on a state court and seeks to set aside a state court judgment obtained by that fraud." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1141 (9th Cir. 2004); *see also In re Sun Valley Foods Co.*, 801 F.2d 186, 189 (6th Cir. 1986). Defendants correctly note, however, that the Eleventh Circuit has declined to recognize a fraud-on-the-court exception. *Velazquez v. S. Fla. Credit Union*, 546 F. App'x 854, 858–59 (11th Cir. 2013) (per curiam) (declining to recognize fraud-on-the-court exception where litigant sought

to vacate state-court summary judgment against him).

The Eleventh Circuit's refusal to recognize a fraud-on-the-court exception, however, does not end the analysis. *Velazquez* is distinguishable. In *Velazquez*, the requested relief was a vacatur of the state-court judgment. *Id.* at 859. Had Klayman sought to declare the Ohio family court judgment void, this would be an easy case. The *Rooker-Feldman* doctrine would surely bar subject-matter jurisdiction. Klayman, however, has not sought such relief. Regarding the claims unrelated to the subpoenas, Klayman seeks only monetary damages against Defendants for various alleged instances of misconduct during the Ohio family court litigation. While preclusion might apply to some of these claims, the Court must ensure that it heeds the Supreme Court's admonition to not conflate *Rooker-Feldman* and preclusion.

The Eleventh Circuit has repeatedly held that the remedy sought by the plaintiff may be dispositive as to whether the plaintiff's claim invites the district court to "review and reject" a state-court judgment in violation of *Rooker-Feldman*. *See, e.g.*, *Drees v. Ferguson*, 396 F. App'x 656, 658 11th Cir. 2010) (per curiam). In *Drees*, the plaintiff sued a state family court judge under 42 U.S.C. § 1983 alleging that the judge's rulings in a child custody proceeding violated her constitutional rights. *Id.* at 657. She sought to have the judge's rulings declared void as well as monetary damages. *Id.* at 657–58. The Eleventh Circuit held that *Rooker-Feldman* applied to the claim for equitable relief: "Plaintiff sought to have the federal court 'review and reject' the state court proceedings *because she wished to have Defendant's rulings declared void as a matter of law*." *Id.* at 658. (emphasis added). *Rooker-Feldman* did not apply, however, to the claim for monetary damages and the court proceeded to address that claim on the merits. *Id.* ("[T]he *Rooker–Feldman* doctrine does not apply when a party seeks money damages for the state court's alleged constitutional

deprivations."). The distinction appears to be that an award of monetary damages would not nullify or reverse the state-court judgment.[4]

The Eleventh Circuit made a similar distinction in *Arthur v. JP Morgan Chase Bank, NA*, 569 F. App'x 669 (11th Cir. 2014). In *Arthur*, plaintiffs sued JP Morgan in state court for damages and injunctive relief based on alleged fraudulent and criminal misconduct in prior foreclosure proceedings. *Id.* at 671. According to the plaintiffs, JP Morgan filed false or fraudulent documents with multiple misrepresentations in each of their state foreclosure proceedings. *Id.* at 672. JP Morgan removed the case to federal district court, and the court subsequently dismissed all the claims on various grounds. *Id.* at 672–73.

Among other arguments, the Eleventh Circuit addressed whether *Rooker-Feldman* applied to the claims for common law fraud and violations of the Florida RICO Act. *Id.* at 674. The court explained that the claims would not effectively nullify the state court judgment because the plaintiffs "seek money damages for alleged criminal and fraudulent conduct in the *generation* of foreclosure related documents." *Id.* at 675. The court also noted that there was no indication that the plaintiffs raised the issue of fraud in the state foreclosure proceeding. *Id.* "Instead of seeking to nullify the state court judgment," the plaintiffs sought "to bypass any findings in the state court judgment that would be adverse to them in this suit." *Id.* In such a situation, where "a plaintiff seeks to relitigate a suit that has been decided against him, he is not so much attacking as trying to bypass the judgment in that suit; and the doctrine that blocks him is res judicata." *Id.* (quoting *Nesses v. Shepard*, 68 F.3d 1003,

_____

[4] This does not mean that *Rooker-Feldman* is inapplicable to every claim for monetary damages. There may be situations where awarding monetary damages would effectively nullify or reverse a state-court judgment. Similarly, *Rooker-Feldman* does not always apply whenever the plaintiff seeks non-monetary relief. *See, e.g.*, *Feldman*, 460 U.S. at 487 (holding that district court had subject-matter jurisdiction over challenge to validity of bar rule underlying the D.C. court's decision).

1004 (7th Cir. 1995)).

The court also explained a second, independent reason *Rooker-Feldman* did not apply. The injuries of which the plaintiffs complained "flow[ed] at least in part from the generation of the foreclosure documents and not solely from the issuance of the state court judgment." *Id.* The court distinguished between cases where the plaintiff sought relief from a state-court judgment itself as opposed to where the plaintiff sought damages for an adversary's actions in a prior proceeding. *Id.* at 675–76 (comparing *Alvarez v. Attorney Gen. for Fla.*, 679 F.3d 1257, 1263 (11th Cir. 2012), with *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 383 (5th Cir. 2013)). The plaintiffs' claims, the Eleventh Circuit concluded, were the type of "independent claims" contemplated in *Exxon* as they were "independent claims of criminal or fraudulent conduct that might 'den[y] a legal conclusion that a state court has reached.'" *Id.* at 676 (alterations in original) (quoting *Exxon*, 544 U.S. at 293).

Again in *Kohler v. Garlets*, the requested relief was dispositive on the question of whether *Rooker-Feldman* applied. 578 F. App'x 862, 864 (11th Cir. 2014) (per curiam). The plaintiff brought suit in federal court against a mortgagor and her attorneys to challenge a mortgage foreclosure on his property. *Id.* at 863. The court held that *Rooker-Feldman* barred the claims to the extent the plaintiff "claimed he was injured by the state court's foreclosure order and seeks 'a determination as to the title and rights and interests' of the foreclosed-upon property." *Id.* at 864. But, to the extent the complaint "raise[d] an independent damages claim against [the mortgagor] and her attorneys based on alleged misconduct during the state foreclosure proceedings," *Rooker-Feldman* did not apply. *Id.* This was because "a challenge to the defendants' conduct in state proceedings does not necessarily seek appellate review and reversal of the state court judgment." *Id.* The Eleventh Circuit quoted with approval a Sixth Circuit decision "holding that the *Rooker–Feldman* doctrine does not

11

bar '*independent claims* that . . . state court judgments were procured by certain Defendants through fraud, misrepresentation, or other improper means.'" *Id.* (alteration in original) (quoting *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir.2006)).

Most recently, in *Fortson v. Georgia*, the Eleventh Circuit affirmed the dismissal of a complaint against a state and state-court judge seeking an order declaring certain state-court orders void, a ruling that certain state statutes were unconstitutional, and damages. 601 F. App'x 772, 773 (11th Cir. 2015) (per curiam). Notably, the court held that *Rooker-Feldman* applied "[t]o the extent Forston requested the district judge void any state judgments," but it affirmed dismissal of the other claims on non-jurisdictional grounds. *Id.* at 775.

Defendants cite two cases where the Eleventh Circuit held *Rooker-Feldman* to apply even to claims for damages based on fraud on a state court. *See Scott v. Frankel*, 606 F. App'x 529, 532 (11th Cir. 2015) (per curiam) (citing *Scott v. Frankel*, 562 F. App'x 950, 953–54 (11th Cir. 2014)); *Crossdale v. Crossdale*, 598 F. App'x 697, 699–700 (11th Cir. 2015) (per curiam).[5] These decisions rely on the pre-*Exxon* rationale that the plaintiff's claim could succeed only to the extent the state court wrongly decided the issues. *Crossdale*, 598 F. App'x at 700; *Scott*, 562 F. App'x at 954. As these decisions are irreconcilable with *Drees*, *Arthur*, *Kohler*, and *Fortson*, the Court must choose between two conflicting lines of unpublished Eleventh Circuit cases.

In *Nicholson*, the Eleventh Circuit eschewed its pre-*Exxon* precedent in favor of the strict

---

[5] Defendants also cite as support for their *Rooker-Feldman* argument the decision of the court in the Middle District of Florida case in which Klayman sued the magistrate judge who presided over the Ohio state court proceedings. While the court did hold that *Rooker-Feldman* applied to the claims for equitable relief, citing *Drees* the court expressed doubt about *Rooker-Feldman*'s applicability to the claims for monetary damages, "assume[d] it ha[d] subject matter jurisdiction at least to the extent Mr. Klayman seeks monetary damages," and proceeded to dismiss those claims on different grounds. (DE 15-40 at 12 n.3.)

language of the *Exxon* court. 558 F.3d at 1272–74. Nevertheless, even post-*Exxon*, the Eleventh

Circuit has occasionally quoted pre-*Exxon* statements that a claim is "inextricably intertwined" with

a state-court judgment in violation of *Rooker-Feldman* if "it would 'effectively nullify' the state

court judgment" or "it 'succeeds only to the extent that the state court wrongly decided the issues.'"[6]

*Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009) (per curiam) (quoting *Goodman ex rel.*

*Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir. 2001)).[7] Based on the Court's review of the case

law, no Eleventh Circuit decision has directly addressed the scope of the "succeeds only to the extent

that the state court wrongly decided the issues" prong in light of *Exxon*'s discussion of an

independent claim that "denies a legal conclusion that a state court has reached."[8] While the Court

---

[6] The "to the extent that the state court wrongly decided the issues" definition of "inextricably intertwined" can be traced to Justice Marshall's lone concurrence in *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring in the judgment). The full quote is: "While the question whether a federal constitutional challenge is inextricably intertwined with the merits of a state-court judgment may sometimes be difficult to answer, it is apparent, *as a first step*, that the federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Id.* (emphasis added). Justice Marshall's statement that this inquiry was only "a first step" in the "inextricably intertwined" analysis suggests that he meant that meeting this criterion is a necessary, but not sufficient, condition for applying *Rooker-Feldman*. This interpretation comports with this Court's conclusion in this case, as well as with the Eleventh Circuit's decisions in *Drees*, *Arthur*, *Kohler*, and *Fortson*.

[7] District courts throughout this circuit have recognized that *Exxon* overruled or abrogated *Goodman*. *See Pullins v. Hagins*, No. 3:14-cv-226-J-32PDB, 2015 WL 1456198, at *6 n.4 (M.D. Fla. Mar. 23, 2015); *Boross v. Liberty Life Ins. Co.*, No. 4:10-cv-144, 2011 WL 2945819, at *1 (S.D. Ga. July 21, 2011); *Sophocleus v. Ala. Dep't of Transp.*, 605 F. Supp. 2d 1209, 1214–15 (M.D. Ala. 2009), *aff'd*, 371 F. App'x 996 (11th Cir. 2010) (per curiam).

[8] This is true even of published post-*Exxon* Eleven Circuit decisions that restate this general language. For example, in *Casale*, the plaintiff sought to enjoin the domestication of a state-court judgment rather than seek monetary damages for any alleged misconduct. 558 F.3d at 1260. The Eleventh Circuit held that *Rooker-Feldman* applied, but it did not state whether it relied on the "effectively nullify" or "succeeds only to the extent that the state court wrongly decided the issues" definition of "inextricable intertwined." In any event, the plaintiff's claim was an attack on the judgment itself rather than a prior adversary's misconduct, so the *Casale* court had no occasion to

is unaware of any published Eleventh Circuit decision in which the court applied this standard to a claim based on a prior adversary's misconduct rather than an attack on the judgment itself, the unpublished decisions cited by Defendants support applying *Rooker-Feldman* to *any* claim that succeeds only to the extent that the state court wrongly decided the issues. Contrarily, the *Drees* line of cases supports a more nuanced and restrictive approach.

As no published Eleventh Circuit decisions bear on this issue,[9] the usual "earliest case rule" to resolve conflicting Eleventh Circuit authority is inapplicable. The rationale for the Eleventh Circuit's "earliest case rule" is respect for the circuit's prior panel precedent rule, "which binds later panels to the decisions of former panels." *See Walker v. Mortham*, 158 F.3d 1177, 1188–89 (11th Cir. 1998). As the Eleventh Circuit treats unpublished decisions as not binding, *Howard v. Warden*, 776 F.3d 772, 776–77 (11th Cir. 2015), the justification for the "earliest case rule" is inapposite in the context of such decisions. The Court must therefore follow the line of non-binding cases that is most faithful to binding authority.

---

address whether the "succeeds only to the extent that the state court wrongly decided the issues" formulation applied to claims based on a prior adversary's misconduct.

[9] The closest that the Eleventh Circuit came to addressing this issue in a published decision was in *Sibley v. Lando*, 437 F.3d 1067 (11th Cir. 2005). *Sibley* was a post-*Exxon* case in which the plaintiff brought a § 1983 action against several state-court judges for millions of dollars in damages based on rulings made against the plaintiff. *Id.* at 1069–70. In a footnote, the court stated: "Sibley does not ask us to fix an erroneous state court judgment, which we could not do, but rather to award $10 million against each state court judge who participated in his cases. This alignment of parties distinguishes this case from a case where review under the *Rooker-Feldman* doctrine would be appropriate." *Id.* at 1070 n.3. While *Sibley* supports the Court's conclusion in this case, it does not directly address the issue before the Court. It is unclear why the Eleventh Circuit referred to the "alignment of the parties" as the basis for its conclusion as opposed to the remedy sought. To the extent *Sibley* is sufficiently direct to be controlling, it appears to be the Eleventh Circuit's first published decision applying *Exxon*. Therefore, even if the "earliest case rule" applies, the Court would be required to reject the proposition that the "succeeds only to the extent that the state court wrongly decided the issues" standard is an invariably sufficient basis for applying *Rooker-Feldman*.

The *Drees* line of authority is more true to *Exxon* than the unpublished decisions cited by Defendants.[10] In *Drees*, *Arthur*, *Kohler*, and *Fortson*, the Eleventh Circuit held that *Rooker-Feldman* did not apply to certain claims where the requested relief would not nullify the underlying state-court judgment. Nevertheless, the state-court judgment in each case was a cause of the plaintiff's injury and the plaintiff's claim could only succeed to the extent the state court wrongly decided the issues.[11] As *Drees*, *Arthur*, *Kohler*, and *Fortson* demonstrate, a claim may survive *Rooker-Feldman*, despite its success being dependent on the state court having been wrong, where the requested relief indicates that the claim is an independent claim for past misconduct rather than an attack on the judgment itself. This interpretation heeds *Exxon*'s caution that preclusion law, not *Rooker-Feldman*, applies to an independent claim "that denies a legal conclusion that a state court has reached in a case to which [the plaintiff] was a party." 544 U.S. at 293.[12]

When applied to claims based on prior misconduct rather than attacks on the judgment itself,

---

[10] The Court notes that multiple district courts in the Eleventh Circuit have applied the *Drees* line of authority, without any discussion of conflicting authority, and have held the remedy sought to be dispositive on *Rooker-Feldman*'s applicability to various claims. *Pullins*, 2015 WL 1456198, at *6; *Griffin v. Griffin*, No. 3:14cv649, 2015 WL 2338640, at *5 (N.D. Fla. May 13, 2015); *Tenore v. LaSalle Bank, N.A.*, No. 14-81215-CV, 2015 WL 265306, at *2 (S.D. Fla. Jan. 21, 2015).

[11] While the *Arthur* court noted that the state court did not address the issue of fraud, if the state court's judgment was based on fraud then the state court would have incorrectly decided the issues.

[12] The *Exxon* Court's citation to the Ninth Circuit's decision in *Noel v. Hall*, provides further insight into what it meant when it referred to independent claims. The cited portion of *Noel* states:

> If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, *and seeks relief from a state court judgment based on that decision*, *Rooker-Feldman* bars subject matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction.

*Noel,* 341 F.3d at 1164 (emphasis added).

15

the "succeeds only to the extent that the state court wrongly decided the issues" formulation conflates *Rooker-Feldman* and preclusion.[13] This is incompatible with the Supreme Court's statement that *Rooker-Feldman* does not necessarily apply simply because a claim "denies a legal conclusion that a state court has reached in a case to which he was a party." *Exxon*, 544 U.S. at 293; *see also Sophocleus*, 605 F. Supp. 2d 1209, 1214–17 (M.D. Ala. 2009) (rejecting the "succeeds only to the extent that the state court wrongly decided the issues" standard as "functionally equivalent to res judicata" in violation of *Exxon*), *aff'd*, 371 F. App'x 996 (11th Cir. 2010) (per curiam). The Court thus follows the *Drees* line of authority regarding how the type of relief requested affects the *Rooker-Feldman* analysis.

As noted *supra*, here Klayman seeks only monetary damages for Defendants' alleged misconduct unrelated to the subpoenas.[14] Awarding such damages may require the Court to deny a legal conclusion reached by the state court, but it would not void, vacate, reverse, or otherwise modify the state-court judgment. In other words, were Klayman to prevail on his claims, the

---

[13] Quoting *Exxon*, the Eleventh Circuit has stated that "the *Rooker-Feldman* doctrine does not prohibit a 'district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court.'" *Nicholson*, 558 F.3d at 1274 (quoting *Exxon*, 544 U.S. at 293). Again quoting *Exxon*, the court noted that *Rooker-Feldman* "does not 'supplant' preclusion law." *Id.* at 1278 (quoting *Exxon*, 544 U.S. at 284). Adding to the confusion, the court in *Alvarez v. Attorney General for Florida* quoted the "succeeds only to the extent that the state court wrongly decided the issues" standard but also noted that "the existence of a state court judgment interpreting or relying upon a statute does not bar a federal court from entertaining an independent challenge to the constitutionality of that statute." 679 F.3d 1257, 1263 (11th Cir. 2012). Such a claim, however, would succeed only if the state court was wrong to rely on the statute. This illustrates how the "succeeds only to the extent that the state court wrongly decided the issues" criterion alone is not always sufficient to determine whether *Rooker-Feldman* applies.

[14] In the complaint's *ad damnum* clause, Klayman seeks "[s]uch other releif as the Court deems proper." (DE 1 at 85.) To the extent this is construed as a request for the Court to set aside the state-court judgment, *Rooker-Feldman* bars the claim.

judgment of the Ohio family court would remain undisturbed. Accordingly, Klayman does not ask this Court to "review and reject" a state-court judgment, and *Rooker-Feldman* is inapplicable. *See Sophocleus*, 605 F. Supp. 2d at 1215–16 ("[A] federal court may hear claims about a state-court 'legal conclusion'—even if the state courts have previously rejected that claim or if it would undermine the state-court judgment—in contrast to its utter prohibition from hearing claims that would vacate a state-court judgment.").

### IV. Personal Jurisdiction

#### A. Legal Standard

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the initial burden of "alleg[ing] sufficient facts to make out a prima facie case of jurisdiction" over the nonresident defendant. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999) (per curiam). If the plaintiff sufficiently alleges a prima facie case of jurisdiction, the defendant must raise "through affidavits, documents or testimony, a meritorious challenge to personal jurisdiction." *Internet Solutions Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009) (per curiam) (quoting *Sculptchair, Inc. v. Centruy Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996)). "If the defendant does so, 'the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents.'" *Id.* (quoting *Sculptchair*, 94 F.3d at 627). The court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). Where the plaintiff's evidence and defendant's evidence conflict, all reasonable inferences must be construed in favor of the plaintiff. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006).

### B. Personal Jurisdiction Under RICO

While circuits are split on the issue, the Eleventh Circuit has held that RICO authorizes

nationwide service of process and that a district court may exercise personal jurisdiction over any

RICO defendant so served as long as the exercise comports with due process. *Republic of Panama*

*v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 940–48 (11th Cir. 1997). *But see, e.g.*, *Cory*

*v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1229–31 (10th Cir. 2006). A plaintiff must assert a

"colorable" RICO claim to take advantage of this nationwide service-of-process authorization as a

basis for personal jurisdiction. *Republic of Panama*, 119 F.3d at 942; *Courboin v. Scott*, 596 F.

App'x 729, 732 (11th Cir. 2014) (per curiam).

The Court need not analyze whether Klayman may take advantage of RICO's nationwide

service-of-process authorization because he fails to state a colorable civil RICO claim. *See Courboin*,

596 F. App'x at 732. To establish a RICO violation under 18 U.S.C. § 1962(c) (2012), a plaintiff

must prove four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering

activity." *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282 (11th Cir. 2006) (per curiam).

"Racketeering activity" means any act indictable under a list of federal criminal statutes, including

those related to mail and wire fraud, as well as certain state criminal offenses. 18 U.S.C. § 1961(1)

(2012). A "pattern of racketeering activity" requires at least two acts of racketeering activity. *Id.*

§ 1961(5).

To allege "racketeering activity," Klayman asserts that Defendants violated sections

817.568(2)(a), (9), (10), and (11), Florida statutes. These alleged violations involve the fraudulent

use of personal identification information and thus cannot constitute racketeering activity. The only

state offenses that suffice as "racketeering activity" are those "involving murder, kidnapping,

18

gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical." 18 U.S.C. § 1961(1).

Klayman also claims that Defendants committed financial institution fraud (18 U.S.C. § 1344), mail fraud (18 U.S.C. § 1341), and wire fraud (18 U.S.C. § 1343), which are offenses listed in the definition of "racketeering activity." As to the alleged false accusations of sexual abuse and the suppression of expert testimony, Klayman does not identify any mailings or "writings, signs, signals, pictures, or sounds" transmitted by interstate wire to further these "frauds" and thus fails to establish mail or wire fraud. *See* 18 U.S.C. §§ 1341, 1343. Nor does he claim that these were part of a scheme or artifice to defraud a financial institution so as to constitute financial institution fraud. *See id.* § 1344.

Klayman's claims regarding the subpoenas fare no better. Regarding the PayPal subpoena, Klayman at best alleges that Defendants served an objectionable subpoena on PayPal and asked PayPal to ignore his objections. (DE 1 ¶¶ 51, 60.) Each of the federal statutes that Klayman claims this violated require a "scheme or artifice to defraud." *See* 18 U.S.C. §§ 1341, 1343, 1344. "A scheme to defraud requires proof of material misrepresentations, or the omission or concealment of material facts reasonably calculated to deceive persons of ordinary prudence." *United States v. Hasson*, 333 F.3d 1264, 1270–71 (11th Cir. 2003) (internal citations and footnote omitted). Asking the recipient of a subpoena to ignore objections is neither a misrepresentation nor an omission.

As to the Colonial Bank subpoena, Klayman cannot assert any injury caused by Defendants' alleged misconduct. Klayman alleges that Defendants failed to serve him with the subpoena, thus failing to give him notice and an opportunity to respond while Colonial Bank was "induced fraudulently and illegally into believing that the release of Plaintiff's financial information was

proper and without objection." (DE 1 ¶¶ 41–43.) The Court takes judicial notice of the Ohio state court's order denying Klayman's motion to quash the Colonial Bank subpoena. (DE 15-2.) Given that the court rejected Klayman's objections to the subpoena once he had notice, Defendants' alleged misconduct in not providing sufficient notice could not have caused Klayman's alleged injuries. *See* 18 U.S.C. § 1964(c) (providing a cause of action to "[a]ny person injured in his business or property *by reason of a violation* of section 1962 of this chapter") (emphasis added); *Williams*, 465 F.3d at 1287 ("The 'by reason of' requirement implicates two concepts: (1) a sufficiently direct injury so that a plaintiff has standing to sue; and (2) proximate cause.").

Klayman's final allegation of misconduct essentially accuses Defendants of bribing the Ohio family court magistrate judge. The Court need not determine whether Klayman sufficiently pleads this as a predicate act because, even if he did, it would be only one act. A RICO claim, however, requires at least two predicate acts. 18 U.S.C. § 1961(5).

Klayman also may not rely on his RICO conspiracy claim to establish personal jurisdiction. That claim is not colorable because it is based on the same underlying conduct that the Court holds does not constitute a colorable violation of RICO. *See Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1269 (11th Cir. 2004).

### C. Subject-Matter Jurisdiction Revisited

Because Klayman fails to allege a colorable RICO claim and otherwise alleges only state-law claims, Klayman must rely on 28 U.S.C. § 1332 (2012) to establish subject-matter jurisdiction. In his complaint, Klayman fails to allege the citizenship of Defendants Baker and Shaw. Klayman alleges that Baker is a national law firm and a limited liability partnership that "conducts substantial business" in this district. (DE 1 ¶ 5.) As to Shaw, Klayman alleges that Shaw is the "Office

20

Managing Partner of the Cleveland headquarters" of Baker and "conducts business" in this district. (DE 1 ¶ 6.)

Neither of these allegations establishes the citizenship of these defendants. *See Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004) (holding that a pleading fails to establish diversity of citizenship where it does not list the citizenship of all the members of a limited liability company or all the partners of a limited partnership); *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994) ("Citizenship, not residence, is the key fact that must be alleged in the complaint to establish diversity for a natural person."). Thus, Klayman's complaint fails to establish subject-matter jurisdiction under 28 U.S.C. § 1332 and must be dismissed. Nevertheless, the Court will determine whether personal jurisdiction would otherwise exist if these defects were cured.

**D. Personal Jurisdiction Under Florida's Long-Arm Statute**

Because Klayman cannot rely on RICO, he must establish personal jurisdiction under state law. *Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 750 F.2d 1516, 1521 (11th Cir. 1985). A court engages in a two-part inquiry to determine whether it has personal jurisdiction over a nonresident defendant. First, it determines whether the forum state's long-arm statute authorizes an exercise of personal jurisdiction. *Robinson v. Giarmarco & Bill*, *P.C.*, 74 F.3d 253, 256 (11th Cir. 1996). Second, it determines whether that exercise comports with the Due Process Clause of the Fourteenth Amendment. *Id.* Both prongs must be satisfied for personal jurisdiction to exist. *Id.*

Klayman argues that the following provisions of Florida's long-arm statute authorize an exercise of personal jurisdiction here:

A person, whether or not a citizen or resident of this state, who personally or through

an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:

. . . .

2. Committing a tortious act within this state.

. . . .

6. Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury . . .

b. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

Fla. Stat. §§ 48.193(1)(a)(2), (1)(a)(6)(b) (2015). "Because the reach of the Florida long-arm statute is a question of Florida state law, federal courts are required to construe it as would the Florida Supreme Court." *Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank*, N.V., 701 F.2d 889, 890–91 (11th Cir. 1983). Florida's long-arm statute is strictly construed. *Id.*

Section 48.193(1)(a)(2) does not provide personal jurisdiction for any of Klayman's various state-law claims because Klayman's allegations do not establish that any defendant committed a tortious act within the state of Florida. Klayman is correct that a defendant's physical presence is not required to commit a tortious act in Florida. *See Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002). Personal jurisdiction can be established "through the nonresident defendant's telephonic, electronic, or written communications into Florida" where the cause of action arises from the communications. *Id.* And as Klayman notes, this includes "posting allegedly defamatory material on the Web about a Florida resident, [because] the poster has directed the communication about a

22

Florida resident to readers worldwide, including potential readers within Florida." *Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201, 1215 (Fla. 2010). Here, however, Klayman does not allege that any defendant directed any communication into Florida or posted any material on the Web. Based on Klayman's allegations, any alleged tortious conduct occurred outside Florida.

Section 48.193(1)(a)(6)(b) is also inapplicable. This provision applies only if the alleged acts cause "injury to persons or property," meaning that the plaintiff must allege "personal injury or physical property damage." *Aetna Life & Cas. Co. v. Therm-O-Disc, Inc.*, 511 So. 2d 992, 994 (Fla. 1987); *Identigene, Inc. v. Goff*, 774 So. 2d 48, 49 (Fla. Dist. Ct. App. 2000) ("[T]here must be allegations of personal-bodily-injury or property damage. Mere allegations of economic damage will simply not suffice."). Klayman does not allege any personal-bodily injury or physical property damage. He also fails to allege that any "[p]roducts, materials, or things processed, serviced, or manufactured" by any defendant were "used or consumed" in Florida. Fla. Stat. § (1)(a)(6)(b). Because Klayman cannot satisfy Florida's long-arm statute, the Court need not examine whether an exercise of personal jurisdiction in this case would comport with due process.

### F. Lack of Personal Jurisdiction Over DeLuca

Though DeLuca filed a motion to dismiss that "adopts, and incorporates by reference, the arguments raised" in the Baker Defendants' motion (DE 18), the Baker Defendants' motion asserts a lack of personal jurisdiction only as to them. The Baker Defendants' motion does not argue that the Court lacks personal jurisdiction over DeLuca. Arguably, DeLuca's adoption of the Baker Defendants' personal jurisdiction argument is insufficient to raise the defense that the Court lacks personal jurisdiction over her.

While a failure to raise a lack of personal jurisdiction defense in a motion to dismiss amounts

23

to a waiver of that defense, *see* Fed. R. Civ. P. 12(h)(1)(B)(i), the Court finds that DeLuca has not waived the defense here. DeLuca filed her motion to dismiss *pro se*, and courts must construe *pro se* filings liberally.[15] *Winthrop-Redin v. United States*, 767 F.3d 1210, 1215 (11th Cir. 2014). Liberally construed, DeLuca's adoption of the Baker Defendants' personal jurisdiction defense is an assertion that the Court lacks personal jurisdiction over her as well. *Cf. Polaroid Corp. v. Feely*, 889 F. Supp. 21, 23–24 (D. Mass. 1995) (holding that *pro* se defendant did not waive defense of lack of personal jurisdiction where defense was stated in title of motion but not developed in brief).

Even if DeLuca did not move to dismiss for lack of personal jurisdiction, a "district court may on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related." *Courboin*, 596 F. App'x at 735 (11th Cir. 2014) (affirming dismissal for lack of personal jurisdiction over non-moving defendants where they were similarly situated to moving defendants). Here, Klayman alleges the same misconduct in the same Ohio family court litigation against all Defendants collectively. Thus, DeLuca is in a position similar to that of the Baker Defendants and the claims against all Defendants are integrally related. *See id.* ("Here, the non-moving defendants were similarly situated to the moving defendants, as all acts or omissions alleged in the complaint occurred in New Jersey during Courboin's divorce proceedings."). Accordingly, the Court lacks personal jurisdiction over DeLuca for the same reasons it lacks personal jurisdiction over the Baker Defendants.

---

[15] Plaintiff is also a *pro se* party, but the Court does not construe his filings liberally because he is a licensed attorney. *Drees*, 396 F. App'x at 657 n.3 ("[W]hen a licensed lawyer appears *pro se*, we do not provide her pleadings with the liberal construction customarily reserved for other *pro se* litigants.").

## V. Conclusion

The Court lacks both subject-matter jurisdiction and personal jurisdiction in this case. Because the Court dismisses this case on jurisdictional grounds, it does so without prejudice. *See Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (per curiam) ("A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice."); *Posner*, 178 F.3d at 1221 (holding that dismissal for lack of personal jurisdiction is without prejudice). This means that Klayman is not precluded from asserting his claims in an appropriate forum. *Posner*, 178 F.3d at 1221.

Klayman has not requested leave to amend his complaint should it be dismissed. The Court exercises its discretion to decline to *sua sponte* grant leave to amend. *See Long v. Satz*, 181 F.3d 1275, 1279–80 (11th Cir. 1999) (per curiam) (holding that district court did not abuse its discretion when it did not allow plaintiff leave to amend complaint prior to dismissal when plaintiff never moved for such leave); *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1318 (11th Cir. 1999) ("Although leave to amend should be liberally granted, a trial court is not required sua sponte to grant leave to amend prior to making its decision."). Therefore, while this case is dismissed without prejudice to Klayman bringing this action in another forum, he may not amend his complaint to attempt to pursue this action further in this forum.

Though this case is dismissed, Baker filed a sanctions motion that remains pending. (DE 17.) Even where a court lacks jurisdiction over a matter, it has the power to impose certain sanctions. *See generally Willy v. Coastal Corp.*, 503 U.S. 131, 1346–39 (1992); *Matthews v. Gaither*, 902 F.2d 877, 880–81 (11th Cir. 1990) (per curiam). Therefore, the Court will consider the sanctions motion in a separate order.

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. The Baker Defendants' motions for the Court to take judicial notice (DE 15; 35; 38) are **GRANTED**.

2. Defendants' motions to dismiss (DE 16; 18) are **GRANTED**. This case is **DISMISSED WITHOUT PREJUDICE**. Plaintiff does not have leave to amend his complaint.

3. The Clerk shall **CLOSE** this case.

4. The Court retains jurisdiction to consider the Motion of Defendant, Baker & Hostetler LLP, to Enjoin Plaintiff From Future Filings Against Defendant Baker & Hostetler, LLP or Any of Its Attorneys Without Prior Court Approval. (DE 17.)

**DONE AND ORDERED** in chambers at West Palm Beach, Palm Beach County, Florida, this 15th day of March, 2016.

KENNETH A. MARRA
United States District Judge