UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:15-CV-80310-KAM

LARRY KLAYMAN,

      Plaintiff,

vs.

STEPHANIE A. DELUCA, et. al.,

      Defendants.

_____/

## ORDER

This matter is before the Court on the Motion of Defendant, Baker & Hostetler LLP, to Enjoin Plaintiff From Future Filings Against Defendant Baker & Hostetler, LLP or Any of Its Attorneys Without Prior Court Approval (DE 17). The motion is ripe for review. For the following reasons, the motion is granted in part.

### I. Background and Procedural History

In 2007, Plaintiff Larry Klayman filed suit in the Court of Common Pleas for Cuyahoga County, Ohio against his ex-wife, Defendant Stephanie DeLuca, for full custody of their two children. (DE 1 ¶¶ 10, 12.) The law firm Baker & Hostetler, LLP ("Baker") represented DeLuca in this Ohio custody case and Defendants Hewitt Shaw, Suzanne Jambe, and James Rollinson (collectively with Baker, the "Baker Defendants") were the attorneys at Baker involved in DeLuca's representation. (DE 1 ¶¶ 3–4, 11–12.) Ultimately, the Ohio family court granted DeLuca custody of the children, ordered that Klayman could only have supervised visits with his children, and awarded DeLuca attorneys' fees. (DE 1 ¶¶ 24, 32.)

1

On March 6, 2015, Klayman initiated this suit alleging that after he filed the Ohio custody lawsuit "Defendants arranged and implemented a pattern of illegal activities in an attempt to financially, personally, and emotionally harm" him. (DE 1 ¶ 17.) In his complaint, Klayman asserted claims under the civil remedies provision of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964 (2012), and various state-law claims.

The Baker Defendants and DeLuca moved to dismiss on various grounds. The Court granted the motions to dismiss based on a lack of both subject-matter and personal jurisdiction. (DE 39.) Simultaneously with their motion to dismiss, the Baker Defendants moved to require Klayman to seek this Court's approval before filing any new action against Baker or any of its attorneys arising out of any actions taken by Baker attorneys in the Domestic Relations Division of the Court of Common Pleas for Cuyahoga County, Ohio or in this Court. (DE 17.) In its order dismissing this case, the Court retained jurisdiction to consider the Baker Defendants' instant motion.

The Baker Defendants note that this is not the first lawsuit that Klayman has brought against them based on the Ohio custody case. In 2008, Klayman sued the Baker Defendants and DeLuca in Florida state court for actions taken during the Ohio custody case, based on similar allegations made in this case. *See* Amended Complaint, *Klayman v. Baker & Hostetler, LLP*, No. 08-21876 (Fla. 11th Cir Ct. 2008).[1] The Florida state court granted the defendants' motion to dismiss. *See* Order Granting Defendants' Motion to Dismiss, *Klayman v. Baker & Hostetler, LLP*, No. 08-21876 (Fla. 11th Cir Ct. June 1, 2010). In 2014, Klayman filed another such suit against the Baker Defendants and Deluca in the Northern District of California, which the court dismissed for lack of both subject-matter and

---

[1] The Baker Defendants previously filed the pleadings and orders from Klayman's other cases that the Court cites herein, and the Court granted the Baker Defendants' request to take judicial notice of them. (DE 39 at 3–4.)

personal jurisdiction. *See* Order Granting Rule 12(B)(1) and 12(B)(2) Motions to Dismiss, *Klayman v. Deluca*, No. 14-03190 (N.D. Cal. Jan. 30, 2015). The current lawsuit before this Court, which the Court also dismissed for lack of subject-matter and personal jurisdiction (DE 39), marks Klayman's third involuntarily dismissed suit against the Baker Defendants arising out of the Ohio custody case.

In addition to the Baker Defendants, Klayman has filed multiple lawsuits in various courts against others associated with the Ohio custody case. For example, Klayman has filed several meritless lawsuits against the Ohio judge and magistrates involved in the custody proceeding, which were all dismissed at the pleading stage. *See Klayman v. Loeb*, No. 15-CV-1683, 2016 WL 29228, at *4 (N.D. Ohio Jan. 4, 2016); *Klayman v. Loeb*, No. 13-cv-267-Oc-10-PRL (M.D. Fla. Jan. 27, 2014); *Klayman v. Mills*, No. 09-1459 (N.D. Ohio Aug. 9, 2009). In the Middle District of Florida, Klayman sued various news organizations and journalists for defamation based on articles about the Ohio custody case. In the court's order granting summary judgment in favor of all defendants, the court stated that Klayman's "approach to this litigation has been quite suspect, to say the least" and observed that "when [Klayman] receives unfavorable rulings, he often plunges into a tirade against whomever he feels has wronged him." *Klayman v. City Pages*, No. 5:13-CV-143-OC-22PRL, 2015 WL 1546173, at *17 (M.D. Fla. Apr. 3, 2015).[2]

---

[2] Even outside the context of the Ohio custody dispute, Klayman has a history of vexatious conduct in this District and in other courts. Recently dismissed *pro se* suits by Klayman in this district include claims against President Barack Obama, former Secretary of State Hillary Clinton, and former President Bill Clinton. *See, e.g.*, *Klayman v. Obama*, No. 15-81023-CIV, 2015 WL 5269958 (S.D. Fla. Sept. 10, 2015) (dismissing *sua sponte* for lack of standing claims against President Obama regarding the Iran Nuclear Agreement Review Act of 2015); Order Granting Motions to Dismiss, *Klayman v. Clinton*, No. 15-cv-80388 (S.D. Fla. Aug. 11, 2015) (ECF No. 96) (dismissing RICO and other claims against Bill and Hillary Clinton and the Clinton Foundation for allegedly withholding documents related to "the granting of waivers by the U.S. Secretary of State for persons, companies, countries, and other interests to do business with Iran" and Defendants' alleged leakage of "Israeli war plans and cyber-warfare methods and sources" to a reporter). Some judges outside this district

Understandably, the Baker Defendants have had enough. All three of Klayman's successive suits against them based on the Ohio custody case have been dismissed at the pleading stage. Additionally, none of Klayman's numerous lawsuits against others based on the Ohio custody case have been found to have merit. Not seeking monetary or any other type of sanctions, the Baker Defendants simply want what they call Klayman's "vexatious ways" against them to stop. Thus, they ask this Court to enjoin Klayman from filing, without this Court's prior authorization, any new action against Baker or any of its attorneys arising out of any actions taken by Baker attorneys in the Domestic Relations Division of the Court of Common Pleas for Cuyahoga County, Ohio or in this Court.

## II. Discussion

The Court has jurisdiction to adjudicate the Baker Defendants' motion. Although the Court dismissed this case for lack of subject-matter jurisdiction, the decision to sanction a party for abuse of the judicial process is a collateral matter that is independent of the Court's subject-matter jurisdiction. *See Willy v. Coastal Corp.*, 503 U.S. 131, 137–38 (1992); *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396–98 (1990); *Chemiakin v. Yefimov*, 932 F.2d 124, 127–28 (2d Cir. 1991); *Willy v. Coastal Corp.*, 915 F.2d 965, 966–68 (5th Cir. 1990), *aff'd*, 503 U.S. 131; *Unanue-Casal v. Unanue-Casal*, 898 F.2d 839, 841 (1st Cir. 1990) (Breyer, J.); *Wojan v. Gen. Motors Corp.*, 851

---

have gone so far as to ban Klayman from practicing law before them. *See Baldwin Hardware Corp. v. FrankSu Enter. Corp.*, 78 F.3d 550 (Fed. Cir. 1996) (affirming monetary sanctions and order permanently barring Klayman from appearing *pro hac vice* before the trial judge for failure to comply with local rules and for "unreasonably and vexatiously multiplying the proceedings"); *Macdraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 994 F. Supp. 447, 460 (S.D.N.Y. 1997) (Chin, J.) (revoking Klayman's *pro hac vice* status and noting that any future applications to appear *pro hac vice* before the trial judge would be denied based on Klayman having "engaged in significant abuse, unreasonable conduct, and acts of bad faith"), *aff'd*, 138 F.3d 33 (2d Cir. 1998).

F.2d 969, 973 (7th Cir. 1988); *Procup v. Strickland*, 792 F.2d 1069, 1073–74 (11th Cir. 1986) (en banc) ("The fact that Procup's complaint in this case may have failed to state a justiciable federal claim is of no impact on the court's power to enter injunctive relief against such a recalcitrant litigant."). Therefore, the absence of subject-matter jurisdiction does not prohibit the Court from adjudicating the Baker Defendants' sanctions motion, which does not require the Court to adjudicate the merits of a "case or controversy" over which it lacks jurisdiction.

The Eleventh Circuit has held that both the All Writs Act,  28 U.S.C. § 1651 (2012), and a court's inherent power allow a court to enjoin a vexatious litigant from abusing the court system.[3] *Laosebikan v. Coca-Cola Co.*, 415 F. App'x 211, 215 (11th Cir. 2011) (per curiam); *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1295 n.15 (11th Cir. 2002); *Procup*, 792 F.2d at 1073; *Harrelson v. United States*, 613 F.2d 114, 116 (5th Cir. 1980) (per curiam). The only restriction the Eleventh Circuit has placed on such injunctions is that "a litigant cannot be 'completely foreclosed from *any* access to the court.'" *Martin-Trigona v. Shaw*, 986 F.2d 1384, 1387 (11th Cir. 1993) (per curiam) (quoting *Procup*, 792 F.2d at 1074). Furthermore, such injunctions are not subject to the traditional four-factor test usually required for determining whether to issue an injunction. *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1101–02  (11th Cir. 2004).[4]

_____

[3] In addition to these bases, the Baker Defendants cite Federal Rule of Civil Procedure 11 as a basis for the Court's authority to enjoin abusive litigation. While the Court does not doubt that Rule 11 could be a basis for such a sanction if properly invoked, the Court declines to rely on Rule 11 in this case because there is no indication that the Baker Defendants complied with the  safe-harbor requirements set forth in Rule 11(c)(2). *See Robinson v. Alutiq-Mele, LLC*, 643 F. Supp. 2d 1342, 1350 (S.D. Fla. 2009) ("Because of the penal nature of the Rule, the procedural requirements of Rule 11 are strictly construed."); *cf. Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997) ("[T]he provisions of § 1927, being penal in nature, must be strictly construed.").

[4] To the extent the Eleventh Circuit's unpublished opinion in *Laosebikan* is contrary, the Court rejects it as inconsistent with the Eleventh Circuit's earlier published opinion in *Klay*. While this

The Court finds that Klayman has abused the court system with meritless lawsuits against the Baker Defendants.[5] The Baker Defendants have already thrice been subject to Klayman's broader scheme of filing multiple baseless lawsuits against those involved in the Ohio custody case. Three frivolous suits against the Baker Defendants all based on similar allegations is enough. *See Riccard*, 307 F.3d at 1295 ("Three or four lawsuits over one employment relationship is enough.") Some form of injunctive relief is warranted.

The Eleventh Circuit "has upheld pre-filing screening restrictions on litigious plaintiffs" such as the injunction the Baker Defendants seek here. *Martin-Trigona*, 986 F.2d at 1387 (citing

---

Court applied the traditional four-factor test when it imposed an injunction pursuant to the All Writs Act in *Abram-Adams v. Citigroup, Inc.*, No. 12-80848-CIV, 2013 WL 451906, at *3 (S.D. Fla. Feb. 6, 2013), the Court did not state that such an analysis was required and the issue was not presented to the Court. The movant in *Abram-Adams* (relying on *Laosebikan*) discussed the four-factor test without mentioning *Klay* and, without argument otherwise, the Court applied that test. In this case, the Baker Defendants have brought *Klay* to the Court's attention and the Court agrees with the Baker Defendants that this precedent renders the four-factor test unnecessary. The Court's application of the more stringent four-factor test in *Abram-Adams* does not affect the validity of that injunction as the four-factor test is *more* stringent than what is required.

[5] While the Court did not directly address the underlying merits of this suit, the assertion that this Court had subject-matter and personal jurisdiction was without foundation. Indeed, the fact that a court may impose sanctions on a party for abuse of the judicial process where jurisdiction over the claim is lacking makes clear that frivolous invocations of a court's jurisdiction can render a claim frivolous to warrant sanctions despite the potential underlying merits. *Cf. Procup*, 792 F.2d at 1073–74 ("The fact that Procup's complaint in this case may have failed to state a justiciable federal claim is of no impact on the court's power to enter injunctive relief against such a recalcitrant litigant. The court has a responsibility to prevent single litigants from unnecessarily encroaching on the judicial machinery needed by others. Were a frivolous lawsuit a bar to the court's inherent jurisdiction, the court would be powerless to act upon even a flood of frivolous lawsuits which threatened to bring judicial business to a standstill."); *see also Rogers v. Nacchio*, 241 F. App'x 602, 610 (11th Cir. 2007) (per curiam) (affirming Rule 11 sanction for frivolous assertion of personal jurisdiction). Furthermore, in this case the Court indirectly addressed the merits of Klayman's RICO claim. The Court held that Klayman's RICO claim could not supply a basis for subject-matter or personal jurisdiction because the claim was not even "colorable." (DE 39 at 18–20.) Thus, the frivolousness of Klayman's claims went beyond baseless allegations of jurisdiction.

*Copeland v. Green*, 949 F.2d 390 (11th Cir. 1991) (per curiam); *Cofield v. Ala. Public Serv. Comm.*, 936 F.2d 512, 517–18 (11th Cir. 1991)); *see also Riccard*, 307 F.3d at 1295 & n.15, 1297.[6] This Court also has entered such an injunction against a vexatious litigant. *Abram-Adams v. Citigroup, Inc.*, No. 12-80848-CIV, 2013 WL 451906, at *3 (S.D. Fla. Feb. 6, 2013) (Marra, J.).

The Court declines, however, to impose a pre-screening requirement in this case. In *Abram-Adams*, the Court imposed such a requirement on a vexatious litigant who brought five lawsuits against the same defendant arising from the same employment relationship because any claim arising from that employment relationship was time-barred. *Id.* at *1–2. In other words, any new lawsuit would be frivolous for the same reason based on an analysis already performed by the Court. In this case, on the other hand, the Court dismissed the claims on jurisdictional grounds and expressly noted the possibility of Klayman pursuing his claims in another forum. While the order dismissing Klayman's state-court suit against the Baker Defendants is silent as to its basis, the suit filed in the Northern District of California was also dismissed on similar jurisdictional grounds. The Court has not—and in this procedural posture cannot—address the underlying merits of Klayman's claims.

The distinction between *Abram-Adams* and this case is important because the primary purpose of enjoining conduct that abuses the judicial process is to protect against wasting judicial

---

[6] The Baker Defendants seek an injunction that would apply to Klayman filing suit in any forum, including state court. While the Eleventh Circuit has stated that, in general, an injunction issued under the All Writs Act cannot enjoin a party from pursing particular claims in state court, this rule is not without several exceptions. *Klay*, 376 F.3d at 1102–04 & n.14. An injunction that places certain restrictions on a vexatious litigant's ability to file new state-court claims that are part of a pattern of abusing the judicial system is one such exception. *See Riccard*, 307 F.3d at 1295 & n.15, 1299 & n.16. Also, to avoid encroaching on other courts' authority, the Court notes that this order has no affect on any court's power to hear a case brought by Klayman in violation of this order. This order enjoins Klayman, not other courts. Of course, another court may rely on this order as it sees fit. If not enforced by another court, the Baker Defendants still have other remedies available for a violation of this injunction, such as seeking a contempt order and appropriate sanctions.

resources on baseless claims. Under the circumstances of this case, a pre-screening requirement would not protect the judiciary from an abuse of the judicial process. Instead, such a sanction would require *more* judicial labor than no sanction at all because any case that Klayman files in any forum would have to be pre-screened by this Court (without the benefit of argument) and the analysis and basis for finding the claim frivolous could be different in every case.

It is possible that there is a court that would have jurisdiction over Klayman's claims, regardless of whether the claims may otherwise lack merit. So a pre-screening sanction would require the Court to engage in varying jurisdictional analyses depending on Klayman's desired forum and then, if there is jurisdiction, address the underlying merits for the first time. Essentially, the Baker Defendants ask for a sanction that would task the Court with potentially numerous *sua sponte* motions to dismiss with varying bases depending on the claims asserted and the forum in which Klayman seeks to assert them. As the Baker Defendants' proposed injunction could overburden the Court (to the detriment of the Court and other litigants), it is an inappropriate sanction. It also would be awkward at best (and unconstitutional at worst) for the Court to screen the merits of future lawsuits sought to be filed in other fora when it cannot address the merits of *this* lawsuit.

Some sanction that deters Klayman from abusing the judicial process, however, is warranted. The Eleventh Circuit has indicated that one appropriate sanction for protecting against frivolous lawsuits is a requirement that the lawsuit be filed by another attorney rather than *pro se*. *Sibley v. Lando*, 437 F.3d 1067, 1069 n.1 (11th Cir. 2005) (per curiam) ("Sibley seems unfazed by sanctions against his person, so the Florida courts decided that his frivolous suits could continue only if Sibley could convince another lawyer to take his case. . . . A similar remedy to that employed in Florida courts might be appropriate, upon motion to a district court, given Sibley's history of vexatious

litigation. This court has enforced similar sanctions in the past."). Imposing such a sanction against a licensed attorney is even more appropriate because attorneys appearing before this Court are already subject to the Court's regulation. Also, baseless *pro se* lawsuits are more egregious when filed by an attorney than when filed by a layperson because attorneys are expected to have a superior understanding of the applicable legal standards.

The Court finds that such a sanction is appropriate in this case. Klayman, a licensed attorney, has filed multiple baseless lawsuits on his own behalf against the Baker Defendants and others arising out of their participation in the Ohio custody case. Requiring Klayman to find another attorney willing to certify that Klayman's claims are not frivolous strikes an appropriate balance between Klayman's right to access the courts and the need to deter frivolous suits. The Court therefore enjoins Klayman from filing *pro se* any action against Baker or any of its attorneys arising out of any actions taken by Baker attorneys in the Ohio custody case or in this case. Klayman must be represented by counsel other than himself if he files any such action in the future.

### III. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that the Motion of Defendant, Baker & Hostetler LLP, to Enjoin Plaintiff From Future Filings Against Defendant Baker & Hostetler, LLP or Any of Its Attorneys Without Prior Court Approval (DE 17) is **GRANTED IN PART**. Plaintiff Larry Klayman is hereby **ENJOINED** from filing *pro se* any action (in federal court, state court, or any other forum) against Baker & Hostetler LLP or any of its attorneys arising out of any actions taken by Baker & Hostetler LLP's attorneys in the Domestic Relations Division of the Court of Common Pleas for Cuyahoga County, Ohio or in this Court. Even if represented by counsel, in any such case Klayman must attach a copy of this order as an exhibit to his complaint (or

9

other case initiating document). The Court retains jurisdiction to modify this injunction upon an appropriate showing.

      **DONE AND ORDERED** in chambers at West Palm Beach, Palm Beach County, Florida, this 17th day of May, 2016.

                                                          _____

                                                  KENNETH A. MARRA
                                                  United States District Judge